## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| WHITNEY BROCK | CIVIL ACTION NO. 22-125 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| WALDEN UNIVERSITY & AFFILIATES | MAG. JUDGE KAYLA D. MCCLUSKY |

## <u>MEMORANDUM RULING</u>

Before the Court is a motion for summary judgment filed by Walden University & Affiliates, Walden University, LLC, and Walden University (collectively, "Walden") against pro se Plaintiff Whitney Brock ("Brock") [Record Document 112]. Brock opposes the motion. Record Document 114. For the reasons that follow, Walden's motion is **GRANTED**.

### BACKGROUND

This Court has previously set forth the relevant factual background of this case in detail, and those facts are largely re-adopted as stated herein. *See* Record Document 63. Brock was born with Amniotic Band Syndrome, a condition that caused a deformity below the knee on her right leg. Record Document 53 at 4 ¶ 17. To this day, the impairment restricts Brock's mobility, requires her to use a prosthesis, and frequently necessitates travel for medical care. *Id.* at 4–5 ¶¶ 17–18.

Despite the impediments caused by her disability, Brock had "dreams of becoming a social worker." *Id.* at 4 ¶ 17. In pursuit of that goal, Brock applied for Walden University's Master of Social Work ("MSW") program, which she began in the fall of 2018. *Id.* at 1–3 ¶¶ 1, 4 and 12. Upon acceptance, Brock says that she informed Walden

of her condition and requested classroom accommodations. *Id.* at 3 ¶ 12. According to Brock, Walden approved those accommodations after she began her courses. *Id.*

The following spring of 2019, Walden's MSW program required that she participate in a "field placement" course. *Id.* at 3–4 ¶ 15. In Brock's account, "field placement engages the student in the full range of activities of a social worker in that setting and is an opportunity . . . to shadow practitioners." *Id.* Having once requested accommodations from Walden, Brock again sought an arrangement to allow her reasonable time to undergo her necessary medical care while completing her field placement obligations. *Id.* But Brock says these requests went unanswered.

So in the spring of 2020, Brock filed a complaint against Walden with the United States Department of Education's Office of Civil Rights ("OCR").  In that complaint, Brock alleged that Walden denied her reasonable accommodations by refusing to assist her in securing field experience. Record Documents 51-7 and 51-11 at 1. Several months elapsed before the matter was resolved. Record Document 53 at 4 ¶ 15. In August 2020, the parties mediated Brock's charges and signed an agreement providing Brock with several accommodations. Among them, Walden agreed to allow Brock extra time to finalize her field placement hours, provided she completed 80% of her coursework at the term's end. If Brock did so, Walden agreed to give her an "Incomplete" for the course while she completed her remaining hours.[1]

---

[1] The express terms of the agreement required that Brock complete 80% of her course requirements prior to the last day of classes. Thereafter, she would be given an Incomplete for the class and would be provided with additional time to complete the remaining 20%. Record Document 51-11 at 1.

After signing the agreement, Brock began her field placement assignment with the Willis Knighton Health System ("Willis Knighton"). Record Document 51-9 at 7. Following the mediation, however, Brock claims Walden reduced the hours she worked per week at her field site but did not reduce the hours required for course completion. Record Document 53 at 7 ¶ 31. This act, according to Brock, "made it virtually impossible for [her] given her disability and the requirements that come with the program" to gain an incomplete. *Id*. Conversely, Walden claims that no one at Walden "had the authority to schedule Brock's hours with Willis Knighton." Record Document 112-2 at 10. Instead, Walden alleges that Ms. Jackson, Brock's field supervisor at Willis Knighton, could not evaluate Brock's performance on several of the required competencies due to her inconsistent attendance patterns. *Id*. at 11. Additionally, Ms. Jackson reported that Brock's development was hindered by her "lack of consistency and initiative," and Brock lacked professionalism by showing up late or not at all some days without providing notice. *Id*. Thus, Ms. Jackson suggested that Brock work five, four-hour days per week, rather than non-consecutive days as she had done previously, to ensure that she could meet her Field Education requirements. *Id*.

Brock also alleges that Walden planned to end her placement on a predetermined date without building in additional time for her to make up missed hours. *Id*. ¶¶ 28–31. For Brock, these circumstances made completing her experiential course impossible, and she was terminated from her field placement in February 2021.[2] *Id*. ¶ 30. However, Walden argues that it was only required to provide Brock with additional time to make

---

[2] Brock incorrectly says "February 2020," but the referenced documents and her response in opposition show that it was February 2021.  Record Document 51-14 at 1.

up the remaining hours if she had completed 80%, or 160 hours, of her Field Education placement by the deadline. Record Document 112-2 at 9. Brock had only logged eighty-eight hours by the deadline; thus, Walden alleges that she was ineligible to receive an "Incomplete" or to receive additional time to complete her remaining hours. *Id.* at 13.

Having failed to obtain results regarding these issues through the OCR's administrative process, Brock filed suit in federal court. Record Document 1. In her complaint, Brock alleged that Walden subjected her to disability discrimination and retaliation in violation of Titles II, III, and V of the Americans with Disabilities Act ("ADA")[3]. Record Document 53 at 12 ¶ 46. Brock also brought breach of contract claims under Louisiana law. *Id.* However, this Court previously dismissed all of Brock's claims, except her claims under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794,[4] arising after January 13, 2021, and her breach of contract claims. Record Document 63 at 9-12. Walden has moved for summary judgment on all remaining claims. Record Document 112. Brock has filed an opposition, Record Document 114, to which Walden filed a reply in support of its motion, Record Document 115.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits

---

[3] 42 U.S.C. §§ 12131–12165, 12181–12189, and 12203.
[4] Although RA claims were omitted from Brock's second amended complaint, given Brock's pro se status, the Court found that Brock intended to urge RA claims in her pleadings.

on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322-23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex,* 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (quoting *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which

there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW AND ANALYSIS

Brock alleges that Walden discriminated against her based on her disability as well as failed to accommodate her disability. She also alleges that Walden retaliated against her after she filed a complaint with the OCR and participated in mediation. Lastly, she alleges breach of contract claims under Louisiana law. The Court will first examine her federal RA claims, and then it will address her state law breach of contract claims.

### I.   Rehabilitation Act Claims

The RA forbids discrimination on the basis of disability in federal employment, activities conducted by federal agencies, and programs receiving federal funds. 29 U.S.C. 794. The RA states that "[n]o otherwise qualified individual with a disability . . . shall solely by reason of his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The RA defines disability in the same way as the ADA. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam). Additionally, the RA and the ADA are analyzed under the same legal standards, and both offer the same remedies. *Id.* However, for the RA to be applicable, an individual must be discriminated against solely by reason of his disability. *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 482 n.2 (5th Cir. 2021) (per curiam).

### i.   Discrimination Claim

An RA plaintiff alleging discrimination with only circumstantial evidence must proceed under the *McDonnell Douglas* burden-shifting framework. *Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021); *Sapp v. Donohoe*, 539 F. App'x 590, 595 (5th Cir. 2013); *see McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 802 (1973). To survive summary judgment, the plaintiff must first make out a prima facie case which requires her to show that: "(1) she is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that she was discriminated against 'solely by reason of her or his disability.'" *Houston*, 17 F.4th at 585-86 (citing *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997)). If a plaintiff establishes a prima facie case, the defendant has the burden of articulating a legitimate, non-discriminatory reason for the adverse employment action. *See id.* at 583, 585 (setting forth the burden-shifting framework and indicating the framework applies to RA claims). If the defendant can do so, the burden reverts to the plaintiff to produce evidence that the defendant's explanation was pretext for unlawful discrimination or that the plaintiff's disability was a motivating factor in the employment decision. *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 698 (5th Cir. 2014) (citing *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004)).

Because Brock offers no direct evidence that she was discriminated against because of her disability, she must proceed via the *McDonnell Douglas* framework. *Houston*, 17 F.4th at 585; *Sapp*, 539 F. App'x at 595. It is undisputed that Brock's condition constitutes a disability and that Walden receives federal financial assistance; thus, two of the four requirements to establish a prima facie case are met. However, a

7

plaintiff must also show she was qualified. *Houston*, 17 F.4th at 585-86 (citing *Hileman*, 115 F.3d at 353). A qualified individual is an individual who is able to perform the essential functions of the employment position either with or without reasonable accommodations. 42 U.S.C. § 12111(8); *see also Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993), *cert. denied*, 511 U.S. 1011 (1994)) ("To avoid summary judgment on whether [she] is a qualified individual, [one must] show 1) that [she] could perform the essential functions of the job in spite of [her] disability or 2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job.").

Walden argues that Brock is not a qualified individual for purposes of the RA because she could not complete the field placement course. Record Document 112-1 at 13. However, Brock's failure to complete her field placement course by the deadline does not render her unqualified. This is unlike cases where a court found an individual was not qualified. *Cf. Chiari v. City of League City*, 920 F.2d 311, 319 (5th Cir. 1991) (finding that an individual with Parkinsons was not able to perform the essential function of a construction inspector's job because it required him to climb buildings and ditches). Additionally, Brock previously had been able to satisfy the requirements of the program with reasonable accommodations. *See* Record Document 112-2 at 10 (noting that Brock met her 160 hour requirement in the fall and finished the additional hours in the weeks following the end of the semester). Brock's condition, Amniotic Band Syndrome, did not render her unable to perform the essential functions of an MSW student because as the

8

prior semester indicates, she could perform the field placement hours with additional time. In other words, she could perform the essential functions with an accommodation.

Nonetheless, Brock cannot establish a prima facie case because her dismissal from the program was not *solely* because of her disability. *Houston*, 17 F.4th at 585-86 (citing *Hileman*, 115 F.3d at 353). Instead, she was dismissed from the program because she did not meet the minimum requirements to maintain her status as a student. She admitted that she only completed 88 hours of the 160 hours of field coursework required to be completed before the end of the semester. Record Document 112-3 at 54-55. The Field Education Manual is clear that if a student fails to meet the minimum hours, she cannot pass the course. *Id.* at 120. Since Brock was dismissed for her failure to meet the requirements of the program, even though she claims her condition caused her absences, it cannot be said that she was discriminated against solely by reason of her disability. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (noting that misconduct, even if the misconduct is a result of the disability, may be a basis for dismissal). Thus, her discrimination claim under the RA must fail.[5]

---

[5] Although it is not clear from the pleadings whether Brock asserts her claim of discrimination based on disparate treatment, any potential claim is similarly dismissed. Brock references the Affiliation Agreement between Walden and Willis Knighton in her second amended complaint by noting that it allows "joined agencies to dismiss any Walden student with medical issues and health conditions that may [sic] limit their ability such as a nature of a disability." Record Document 53 at 11 ¶ 41. She continues by stating that such policies confirm Walden's objective of offering an "unwelcome setting" towards students with disabilities. *Id.* However, Brock neglects to note the Walden Student Handbook does prohibit discrimination of any sort. *See* Record Document 112-3 at 127. Furthermore, Brock points to no specific facts indicating Walden has treated other non-disabled students more favorably than her. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (explaining that a disparate treatment discrimination claim hinges on whether an employer or institution treats individuals with a protected characteristic less favorably).

Even assuming Brock did establish a prima facie case of discrimination, it is evident from the record that she is only pursuing compensatory damages. *See* Record Document 53 at 13 ¶ 49. To recover compensatory damages, a student must show intentional discrimination by the institution. *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016).  "When the record is 'devoid of evidence of malice, ill-will, or efforts . . . to impede' a disabled student's progress, summary judgment must be granted in favor of the university." *Id.* (citing *Delano–Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). In such a circumstance, the Court should defer to the university's professional judgment. *Id.*

Evidence of such ill-intent is entirely absent from the record. Rather, Walden has pointed to Brock's failure to complete required aspects of the program and her substandard performance as support for its decision to fail her. Record Document 112-2 at 12-13 and Record Document 112-1 at 19. Although Brock argues that her hours were reduced, Walden argues that no one at Walden had authority to schedule Brock's hours. Record Document 112-2  at 10. Nonetheless, even if Walden did reduce her hours, there is no evidence indicating this decision was to impede her progress. *See Campbell*, 842 F.3d at 380 (citing *Delano–Pyle*, 302 F.3d at 574). Rather, the evidence shows that this decision was made to better enable Ms. Jackson to evaluate Brock's competency. *See* Record Document 112-3 at 167-168 (highlighting that Ms. Jackson had been unable to evaluate Brock due to her inconsistent attendance patterns, tardiness, absences, and lack of initiative).  Given that the Court should defer to the university's professional judgment, *Campbell*, 842 F.3d at 380, Brock's RA discrimination claims would still fail.

### ii.    Failure to Accommodate Claim

Next, Brock alleges that Walden failed to accommodate her disability. In addition to prohibiting discrimination, the RA establishes an affirmative obligation upon entities receiving federal financial assistance to provide reasonable accommodations to disabled individuals. *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). "Section 504 [of the Rehabilitation Act] has been construed as prohibiting disadvantageous treatment, rather than as mandating preferential treatment." *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988) (cleaned up). "An institution is not duty bound to acquiesce in and implement every accommodation a disabled student demands." *Campbell*, 842 F.3d at 381. Furthermore, a "disabled student does not have a right to [her] accommodation of preference." *Id.* at 380.

To be successful on a failure to accommodate claim, one must show that: "(1) [she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith*, 956 F.3d at 319 (citing *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). The Court has previously determined that Brock is a qualified individual with a disability. As for the second prong, it is undisputed that Brock's disability was known by Walden, *see* Record Document 112-2 at 3-4; thus, the primary issue is whether Walden made reasonable accommodations. Brock asserts that it did not. Record Document 53 at 12 ¶ 46. The Court disagrees.

Walden and Brock entered into an agreement whereby Brock would receive additional time to finish the field placement courses if she completed a reduced number

11

of hours by the original deadline. Record Document 112-2 at 9. Ordinarily, a Walden student must complete two field placement courses in her foundation year, which entails 400 hours of field coursework, or 200 hours per course, by a set deadline. Record Document 112-3 at 119. However, in an effort to accommodate her disability, Walden agreed that Brock would only need to complete 160 hours per course by the deadline, and then she would have additional time after the deadline to complete the remaining hours. Record Document 112-2 at 9. This was a reasonable accommodation, which proved effective in the fall. *Id.* at 10 (noting that Brock completed 161 hours in the fall and was provided extra time to complete the remaining 39 hours).

In the spring, however, Brock had only completed eighty-eight hours by the deadline. *Id.* at 12. Brock acknowledges that she was short of the requisite hours, but instead asserts that she should have been given additional time to meet the hourly requirement. Record Document 114 at 3 (stating in her response that "Walden was instructed to build two additional weeks per quarter for Plaintiff by contractual agreement. Walden did not."). The record reflects, however, that Walden would only provide additional time if Brock had achieved the requisite 160 hours. *See* Record Document 112-2 at 9. Furthermore, this Court must give deference to Walden's decision not to extend the deadline even further. *See Kaltenberger v. Ohio Coll. of Podiatric Med.,* 162 F.3d 432, 436 (6th Cir. 1998) ("Courts must . . . give deference to professional academic judgments when evaluating the reasonable accommodation requirement."). Walden pointed to Brock's substandard performance, as reported by her Willis Knighton field supervisor, in support of its decision not to provide her additional time. Record

Document 112-1 at 19. Not to mention, the Winter quarter began in November 2020 and ended on February 14, 2021; if Brock worked an average of 20 hours per week for the 12-week quarter, she would have worked 240 hours. *See* Record Document 112-3 at 53. She had only completed eighty-eight hours, which translates to an average of about seven hours per week. An additional two weeks, as Brock requested, still would not have been sufficient to achieve the 200 hours required for course completion if she worked two full 40-hour weeks.

The Court would be amiss to find that Walden had to give *even more* additional time beyond the accommodations it had already given. *See Campbell*, 842 F.3d at 381. ("An institution is not duty bound to acquiesce in and implement every accommodation a disabled student demands."). Walden provided a reasonable accommodation when it reduced Brock's hours by 20%. *See Kaltenberger*, 162 F.3d at 437 (finding that the university "did not fail to reasonably accommodate plaintiff's learning disability by refusing to waive its policy regarding the retaking of examinations, *especially in light of the other accommodations* which were made for her.") (emphasis added); *see also Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 883 (S.D. Tex. 2012), *aff'd*, 524 F. App'x 93 (5th Cir. 2013). Thus, Brock's failure to accommodate claim must fail.

### iii.   Retaliation Claim

Next, Brock claims that Walden retaliated against her after their mediation. Brock filed a complaint against Walden with OCR in March 2020, alleging discrimination based on race and disability. Record Document 112-2 at 8. To resolve this issue, Brock and

Walden participated in a mediation process with OCR. *Id.* at 9. After this mediation, Brock claims, Walden and Willis Knighton reduced her field placement hours from eight hours per day to four hours per day in an effort to prevent her from completing the program. Record Document 53 at 7-8 ¶ 31.

A retaliation claim under the RA based on circumstantial evidence is also analyzed under the *McDonnell Douglas* burden-shifting framework. *Higbie v. Kerry*, 605 F. App'x 304, 307 (5th Cir. 2015). "To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he engaged in a protected activity (e.g., the filing of an [OCR] complaint); (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the adverse employment action and the protected activity." *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004) (per curiam). Once a prima facie case is established, the burden falls on the defendant to show it had a "legitimate nondiscriminatory reason for the adverse . . . action." *Id.* If the defendant provides such a reason, the plaintiff then has the burden to show that the action would not have happened "but for" the protected activity. *Id.*

Brock's claim fails because she cannot establish a prima facie case. It is undisputed that Brock engaged in a protected activity when she filed the OCR complaint in March 2020. As for an adverse action, Walden claims that "the only alleged retaliation . . . is Walden's decision to refuse [Brock's] request for additional time to complete her Field Education course at Willis Knighton." Record Document 112-1 at 22. Conversely, in her second amended complaint, Brock seemingly alleges the adverse action was the

14

reduction of her daily field placement hours[6] from eight to four. Record Document 53 at 7-8, ¶ 31.

In any event, the Court finds that both of these actions could be characterized as adverse employment actions. *Higbie*, 605 F. App'x at 308 ("An adverse employment action is one that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (cleaned up). Brock, however, has failed to show that there is a causal connection between the adverse action, either reducing her hours or refusing to give additional time, and the protected activity, filing the complaint with OCR. She has provided no evidence of a causal connection other than mere speculation that Walden was maliciously attempting to keep her from completing the requisite hours. Such speculation is insufficient to establish a causal connection. *See Price v. Wheeler*, 834 F. App'x 849, 858 (5th Cir. 2020) (noting that the plaintiff "provided no evidence—aside from her own speculation that these allegedly retaliatory

---

[6] Walden claims that "[n]either Dr. McElveen nor anyone else at Walden reduced Brock's working hours at Willis Knighton." Record Document 112-2 at 12. However, Walden did admit that its employee, Dr. McElveen, had met with Willis Knighton representatives, including Ms. Jackson, Brock's field supervisor at Willis Knighton, to discuss a plan to ensure Brock would meet her Field Education requirements. *Id*. at 11. Ms. Jackson suggested Brock work five consecutive four-hour days, rather than non-consecutive days as Brock had done previously. *Id*. Walden urges the Court to accept its statement that it did not reduce her hours as true because Brock did not specifically rebut it in her response. Record Document 115 at 2. In response to a movant's statement of material facts, the opposing party must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. This Court agrees Brock does not set forth the facts that pose a genuine issue to be tried in a concise or coherent manner, but she does seem to dispute Walden's role in the reduction of her hours. *See* Record Document 114 at 4 ("An eight-hour/day, weekday, was significantly reduced by [Dr. McElveen's] approval."). Give Brock's pro se status, the Court finds this is sufficient. Nonetheless, the Court is still cognizant that it should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).

incidents were causally connected to her engagement in protected activities" as support for its decision that dismissal of the retaliation claim was warranted). Not to mention, Brock fails to indicate why 20 hours per week over the course of 12 weeks was insufficient time to complete her 160 hours.

However, even assuming arguendo that Brock has established her prima facie case, the Court finds that Walden has indicated a legitimate non-discriminatory reason for its actions. Ms. Jackson, Brock's field supervisor and a Willis Knighton employee, had been unable to evaluate Brock's performance as to several core competencies due to Brock's inconsistent attendance patterns and lack of consistency and initiative. Record Document 112-2 at 11. Thus, Walden asserts that Ms. Jackson altered her hours to address Brock's inconsistent attendance patterns. Record Document 112-2 at 11. Brock, on the other hand, has offered no evidence to indicate Walden's reasoning is pretextual or that her hours would not have been reduced "but for" her filing the OCR complaint or engaging in mediation. *Price*, 834 F. App'x at 859. Accordingly, summary judgment on this claim must be granted.

## II.   State Law Breach of Contract Claims

The Court will next address Brock's state law breach of contract claims. As previously noted, Brock filed a complaint against Walden with OCR, alleging discrimination based on race and disability. Record Document 112-2 at 8. To resolve this issue, Brock and Walden participated in a mediation process with OCR. *Id.* at 9. This process led to a Resolution Agreement that was signed by both parties, which provided that Walden would give Brock additional time to complete her field coursework if she completed 160

hours by the course's end, 20% less than the usual requirement. Record Document 112-2 at 9.  Brock argues that Walden breached this agreement when it failed to give her an Incomplete and extra time to complete her required hours.

The Court agrees with Walden that it did not breach the contract. To prove breach of contract under Louisiana law, a plaintiff must show: "(1) the existence of a contract; (2) a party's breach thereof; and (3) resulting damages." *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 283 (5th Cir. 2023). The plaintiff bears the burden of proof. *Id*. The Resolution Agreement clearly states that Walden should approve a request for an Incomplete grade only if Brock had completed 80% of the required coursework. Record Document 112-3 at 132. Brock, however, had barely completed 50%. *Id*. at 54-55. Thus, Walden was under no obligation to provide her with an Incomplete grade. *See* La. Civ. Code art. 1993 ("In case of reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed . . . [her] own obligation."). Given that Brock had not performed her end of the bargain, Walden did not have to provide her with an Incomplete or additional time to complete the coursework. Thus, Brock's breach of contract claim fails, and summary judgment must be granted as to this claim.

Lastly, Brock seemingly alleges a breach of contract claim related to the U.S. Field Site Affiliation Agreement ("Affiliation Agreement"). The Affiliation Agreement is an agreement between Walden and Willis Knighton that outlines each party's specific duties regarding Field Education placements. *See* Record Document 112-3. It is undisputed that Brock is not a party to the contract. "[N]o action for breach of contract may lie in the

absence of privity of contract between the parties." *Pearl River Basin Land & Dev. Co. v. State of Louisiana*, 2009–0084 (La. App. 1 Cir. 10/27/09); 29 So. 3d 589, 593. Brock alleges, however, that she was a third party beneficiary to the Affiliation Agreement. Record Document 114 at 10-11.

The Louisiana Civil Code recognizes the creation of a contractual benefit for a third party, referred to as a stipulation *pour autrui*, but does not provide an analytic framework for determining whether a third party beneficiary contract exists. *See* La. Civ. Code art. 1978. However, the Louisiana Supreme Court has determined there are three criteria to consider when determining whether contracting parties have provided a benefit for a third party: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 2005–2364 (La. 10/15/06); 939 So. 2d 1206, 1212. Courts should analyze whether a third party beneficiary contract exists on a case by case basis, and "[e]ach contract must be evaluated on its own terms and conditions in order to determine if the contract stipulates a benefit for a third person." *Id.* The party claiming the benefit bears the burden of proof, and a third party beneficiary is never presumed. *Id.*

The Court finds that Brock has failed to allege sufficient facts, or any facts for that matter, to carry her burden on this claim.  Although Brock briefly mentions the Affiliation Agreement in her second amended complaint, *see* Record Document 53 at 10-11 ¶¶ 39-40, she does not point to any language in the document indicating a clear intent to

benefit a third party. This Court agrees with Walden that this contract serves to coordinate Field Education placements between Walden and Willis Knighton, and any benefit to students is merely incidental. Since Brock is not a third party beneficiary, she has no action for breach of contract. Nonetheless, even if Brock were a third party beneficiary, she does not allege any facts outlining a breach of the Affiliation Agreement. The only portion of the contract between Willis Knighton and Walden that she references is the following paragraph:

> The Field Site reserves the right to dismiss at any time any Student whose health condition, conduct or performance is a detriment to the Student's ability to successfully complete the Field Experience Program at the Field Site or jeopardizes the health, safety or well-being of any patients, clients or employees of the Field Site. The Field Site Coordinator or assigned Field Site Supervisor shall promptly notify the Walden Coordinator and/or Walden Supervisor of any problem or difficulty arising with a Student and a discussion shall be held either by telephone or in person to determine the appropriate course of action. The Field Site will, however, have final responsibility and authority to dismiss any Student from the Field Experience Program.

Record Document 51-28 at 4. Brock claims this language indicates that Willis Knighton and Walden aimed to discriminate against students with medical conditions. Record Document 53 at 10-11 ¶ 40. Certainly, this is not what the paragraph states at all, and Brock offers no facts to support such a broadly stated conclusion. Thus, summary judgment on this claim must be granted.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Walden's motion for summary judgment [Record Document 112] is **GRANTED**. All claims against Walden are **DISMISSED WITH PREJUDICE**. A judgment will be issued alongside this ruling.

**THUS DONE AND SIGNED** this 31st day of January, 2024.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE